# JULY TERM, 1848.

## ROGERS v. COLT.

1. The construction and effect of written instruments is matter of law to be determined by the court and not by the jury.

2. Parol evidence cannot be received to alter, add to, or explain a written instrument not ambiguous on its face. The contract must be construed according to the intention of the parties. But that intent must be collected from the instrument only.

3. Fraud, or failure in the consideration of a sealed instrument cannot be inquired into in a court of law—the only inquiry there as to fraud is in the execution of the instrument.

4. A sealed instrument reciting "I do hereby transfer to R. or his assigns my one-fourth interest in the house and lot," &c. is an executed contract, and conveys the interest of the grantee in the premises; it being an equitable interest, and the grantor the *cestui que trust*.

5. No abandonment of a contract under seal can be inferred from any lapse of time merely, short of the 16 years which the statute makes a bar.

6. An error in the charge of the court below in favor of plaintiff in error cannot be taken advantage of by him to reverse the judgment.

On writ of error, by Platt Rogers, upon a judgment in the Supreme Court, on a writ of error from that court to the Circuit Court of Passaic.

An action of debt was instituted, by a writ of foreign attachment in the Circuit Court of Passaic, by John Colt, against Platt Rogers, a non-resident debtor.

The suit was founded upon the following agreement, under seal :

"For and in consideration of the sum of six hundred and twenty-five dollars, to me in hand paid, or secured to be paid

704

by Platt Rogers, I do hereby sell, assign and transfer to him or his assigns, my one-fourth interest in the house and lot, called the Dr. Warren property, now standing in the name of C. M. Godwin, on which there is a mortgage of fifteen hundred dollars. And the said Platt Rogers, on his part, agrees to assume the payment of one-fourth part of the said mortgage, and save the said John Colt harmless from same; and also agrees to pay the said John Colt, or his assigns, the said amount of six hundred and twenty-five dollars, as above mentioned; and the said John Colt hereby authorizes and requests C. M. Godwin to convey to the said Platt Rogers the said one-fourth interest in the said lot.

"In witness of this agreement, the said John Colt and Platt Rogers have interchangeably set their hands and seals, this 30th Nov. A. D. 1835.

"JOHN COLT, [L. s.]
"PLATT ROGERS, [L. s.]

"SIGNED, SEALED, AND DELIVERED }
    "IN PRESENCE OF              }
  "THOMAS P. ROGERS."

The defendant appeared to the suit, gave bond, and pleaded *non est factum*. Issue was joined, and the cause was tried in the Passaic Circuit, before Judge WHITEHEAD.

Thomas P. Rogers proved the execution of agreement.

*Being cross-examined* on part of Platt Rogers, testified that some time after the execution of the paper, he twice or three times called upon Mr. Colt and told him that Rogers wanted this thing settled.

That afterwards he spoke to Mr. Colt upon the subject, and that Mr. Colt then said that he had forgotten it, but that he would attend to it, and if he did not, it was no matter. That there was but one paper executed, and Mr. Colt took it.

After the paper was signed, it was said by Mr. Rogers, that he wanted the deed to be made to Judge Reynolds.

A. S. P., a witness produced on the part of the plaintiff below, testified that Colt and Rogers came into his office together, and handed him the paper to be kept by him for the access of

both. That he put it away, and accidentally found it some year or so ago.

The plaintiff below then read the said agreement before the Jury and rested.

The defendant below moved for a non-suit upon the ground that the plaintiff was not entitled to recover, because he had not proved any further act on his part, after signing the agreement, and insisted that he should have procured a deed and tendered it to the defendant, which motion the court refused, and the defendant excepted to the opinion of the judge.

The defendant produced evidence that there was a mortgage upon the premises for sixteen hundred dollars, and rested the defence.

The Judge then charged the Jury as follows:

" That in construing the agreement, the intention of the parties is to govern, which is to be collected from the terms of the contract. The intention was that Mr. Colt sold to Mr. Rogers the equitable interest in the property. That Mr. Colt did all he could be required to do, and was completely divested of all interest whatever.

" He was not bound to do more than he did, either by express or implied covenant, and that his right of action under the agreement was complete. That the defendant was entitled to receive the whole rights of Mr. Colt in the property. That nothing had been proved to show an abandonment, and that lapse of time had not hurt plaintiff's rights. That the conversation between the plaintiff and Thomas Rogers was not binding, nor did it change the contract.

" That the variance in the description of the mortgage does not vitiate the contract.

" That in an action on a specialty, fraud in the consideration cannot be set up, and that fraud in the execution is the only kind which can be set up.

" That the defences relied on by the defendant are not allowable in law. That the jury are not to judge of the evidence as to the construction of the contract.

" The court further instructed the jury that interest should be charged from the date of the contract, and recommended that

Rogers v. Colt.

a verdict should be rendered for six hundred dollars, and interest thereon from the date of the paper."

To which charge of the Court in all its parts the defendant below excepted.

The jury rendered a verdict for nine hundred and thirty-one dollars and nineteen cents, with costs, being for the sum of $600, and interest thereon.

The judgment of the Circuit Court rendered on this verdict, was affirmed by the Supreme Court, on a Writ of Error. (a)

*E. B. D. Ogden*, and *A. Whitehead*, for plaintiff in error

Covenants are dependent, and instrument is to be construed not so much by words, as intent of the parties, to be judged by jury from whole evidence. 3 *J. R.* 388, 295, and 424, 5 *Wend.* 26 ; 11 *do.* 74 ; 2 *B. & C.* 82.

Court erred in not charging that error in recital of New York made contract void. 2 *Esp.* 639. Interest not due. *Coxe* 176 ; 4 *Dall.* 52.

*A. S. Pennington*, and *William Pennington*, contra.

A contract is not put an end to by a partial failure of consideration. 4 *Ad. & E.* 599 ; 1 *Saund.* 320 ; 7 *J. R.* 250 ; 1 *H. Black.* 273, note A ; 25 *Wend.* 107 ; 21 *Wend.* 131 ; 4 *Bingh.* 463 ; *Dougl.* 691 ; 1 *T. R.* 638, 645.

Intention of parties is to be collected from contract itself. 8 *T. R.* 370 ; 5 *Wend.* 26.

Fraud can be taken advantage of at law only when it is in the execution of the contract. 3 *Phil. Ev. Cowen & Wills,* notes, *p.* 1448 note, 969.

Interest always follows liquidated account when no day of payment is fixed. *Shep. Touch.* 369 ; 8 *T. R.* 190 274 ; 2 *Bro. C. C.* 2 ; 2 *W. Black.* 761 ; 1 *Dessaus.* 537 ; 7 *T. R.* 120 ; 2 *Vesey* 25 ; 8 *Ves. jr.* 146.

The CHIEF JUSTICE delivered the opinion of the court.

---

(a) See Ante, p. 18.

This was an action of debt, originally instituted by the defendant in error in the Circuit Court of the County of Passaic, to recover a sum of money alleged to be due upon a contract under seal, executed by and between the parties to the action.

On the trial, the plaintiff having proved the due execution of the contract, and rested his evidence, the defendant moved for a nonsuit. This motion was refused, and the refusal forms one of the grounds of error.

Whether the decision of the court in refusing to nonsuit, was or was not erroneous, depends upon the construction to be given to the contract. Was the plaintiff's right of recovery complete upon proof of the contract, or was he bound to prove something further to entitle him to recover? If it be an absolute obligation to pay money, as a bond or sealed bill, the plaintiff has merely to prove the contract. But if the obligation on the part of Rogers were not absolute, but depended upon some act to be first done by Colt, or upon some other condition precedent, then it was necessary to shew that condition complied with, in order to establish a valid cause of action. It becomes then a pure question of construction.

The contract must undoubtedly be construed according to the intention of the parties. But that intention is to be gathered from the contract itself. If there be no ambiguity in the contract; if the contracting parties have declared their intention in plain and unequivocal language, there can be no construction against the words of the contract. We may not alter the terms which the parties themselves have adopted, or make a new contract for them. The construction must be agreeable to the common understanding of the terms used, without regarding technical meaning or grammatical propriety. And it must be upon the whole contract, so that one clause or phrase may qualify, enlarge, restrain, or even totally defeat another.

The contract on the part of Colt, the plaintiff below, is as follows : " For and in consideration of the sum of $625, to me in hand paid or secured to be paid, by Platt Rogers, I do hereby sell, assign and transfer to him or his assigns, my one-fourth interest in the house and lot called the Dr. Warren property, now standing in the name of C. M. Godwin, on which there is a mortgage of $1500."

This is the entire covenant on the part of Colt.

1. Its language imports a present, immediate transfer of Colt's interest in the land. " I do hereby sell, assign and transfer." There is no allusion to any further act to be done.

2. The instrument is valid and effectual to transfer the grantor's interest. No further act was necessary. He had but an equitable or beneficial interest, not the legal title. It needed no formal deed, no acknowledgment, no recording.

3. There is no other language in the instrument clearly shewing a different intent, by which the natural import of these terms is altered, or their effect qualified.

4. On the delivery of the instrument the whole equitable interest of Colt passed and vested in Rogers. He acquired an immediate right to the rents and profits of the property. It is immaterial whether in point of fact he did or did not receive them. He acquired by the contract an absolute, immediate, irrevocable right to receive them, and to enforce their payment in a court of equity. He acquired, moreover, a right to have the legal title conveyed to him, and to force the conveyance, if necessary, by means of a court of equity. If he failed to collect the rents, or to acquire the legal title, the fault lay at his own door.

5. On the execution of the contract, Colt parted with all his interest in the premises. He had but an equitable interest. *That* he assigned to Rogers. From that hour he had no right to *receive* the rents, no power to enforce their collection. If he had received them, it would have been on his part a gross fraud, which would have been relieved against in equity. And the trustee himself, if he had paid them to Colt after notice of the assignment, would, in equity, have been liable over to Rogers for the amount so paid.

Nor had Colt, after the execution of the contract with Rogers, any right to or claim upon the *legal title.* He was no longer *cestui que trust.* He had no interest whatever in the premises. He could not compel a conveyance by Godwin, either to himself, or to Rogers. A bill in equity by him against Godwin, to enforce a conveyance, must have been dismissed. He

was neither a necessary nor a proper party to a bill for that purpose.

There is a further clause in the instrument by which Colt authorizes and requests Godwin to convey the legal title to Rogers. This direction, though not necessary to authorize a conveyance of the legal title to Rogers, was nevertheless proper and appropriate, as evincing his assent to the transfer of title. It was all that Colt could do towards effecting the conveyance. He had, as we have seen, deprived himself of all power to *compel* the conveyance. He had no title to the property, legal or equitable. All the interest he ever had was vested in Rogers. As to the property, Rogers stood in Colt's shoes. The contract on Colts part was fully executed. He had done all that lay in his power to do. There is nothing then in the contract on Colt's part, to indicate that it was as to him in any sense executory.

Let us turn then to the covenant on the part of Rogers, upon which the action is more immediately founded. It is in these words : " And the said Platt Rogers on his part agrees to assume the payment of one-fourth part of the said mortgage, and save the said John Colt harmless from the same ; and also agrees to pay the said John Colt or his assigns, the said amount of $625, as above mentioned." Here again is language of present covenant. There is no condition annexed, no reference express or implied, to any future contingency. It is not a promise to pay when the legal title is conveyed, but an absolute, unconditional promise to pay immediately. It is well settled that a promise to pay without specifying the day, is a promise to pay immediately. It is tantamount to a promise to pay " forthwith," or " in hand," or to the ordinary due bill, which imports a present indebtedness.

It is not, as was ingeniously suggested by the respondent's counsel, a covenant to pay or secure to be paid—but it is a covenant to *pay* as above mentioned. The only mode of payment previously mentioned, was payment in hand—a cash payment, and to *that* alone the clause " as above mentioned " is to be referred. If this covenant on the part of Rogers stood alone, would its meaning admit of any doubt? Suppose that Rogers

had signed an instrument in this form: " I agree to pay John Colt or his assigns, $625. Witness my hand and seal."

Could such an instrument be tortured into a conditioned agreement, or a covenant to pay when he received a title ? Yet that instrument is no more explicit in its terms than the covenant contained in this agreement. Indeed the instrument is too clear in its terms to admit of doubt. There is no ambiguity, and therefore no room for interpretation. There was then no error in refusing to nonsuit. The plaintiffs right of action was complete upon proving the execution of the contract.

It is assigned as a further ground of error, that the judge withdrew from the consideration of the jury questions peculiarly within their province, and assumed to decide points, which by law were exclusively for the consideration of the jury. If so, he clearly erred. The appropriate province of the court and of the jury are totally distinct. Neither may trench upon the province of the other, without a violation of legal principle, and aggression upon the rights of parties. The maxim is coeval with the common law itself, that to questions of law the court answer—to questions of fact the jury respond. A violation of the maxim is subversive of the system of trial by jury. Did then the judge withdraw from the jury the consideration of any question of fact, material to the decision of the cause ?

The construction of all written instruments, wills, deeds, bonds and contracts of every nature, belongs exclusively to the court. The legal effect of a written instrument is peculiarly a question of law—to be decided upon established principles. It would indeed be placing all rights derived from written instruments upon a most unstable foundation, to subject them to the varying opinions of jurors—without reference to fixed rules and established principles of interpretation.

The defendant's counsel, by moving to nonsuit, admit that the interpretation of the contract was the province of the court. They asked the court to withdraw the whole question from the jury, by nonsuiting the plaintiff. And they now ask this court to reverse the judgment below, because the judge refused so to do.

But it is said that parol evidence was introduced, and that

the jury should have been left to judge of the effect of that evidence upon the interpretation of the contract. If the object of the parol testimony was to alter the construction and vary the plain meaning of a written contract, it was totally inadmissible for any such purpose. Parol evidence is not admissible to alter, vary, or contradict a written instrument.

The parties have reduced their agreement to writing. It is a contract respecting real estate, which the law requires to be in writing. It would not be competent to prove by parol, what were actually the terms of the agreement, nor what passed between them, even at the time of its execution. The parties have made a solemn instrument under hand and seal the depositary of their contract, and their rights cannot, and ought not, to be frittered away by the frail efforts of human memory. Now the object of the parol evidence introduced, so far as it can be gathered from its exceedingly vague and indefinite character, was to shew from the declarations of Colt that he was to procure a deed, or do some other act, before the purchase money was to be paid. This, it is manifest, was not only to vary the written contract, but would have been directly in its teeth, and utterly subversive of its terms.

But if the evidence be admissible it cannot be tolerated, than the plain language of a written contract shall be overturned by loose inferences, from declarations so vague and unmeaning as were imputed by the witness in this cause to the plaintiff below.

The statute provides that the lapse of sixteen years shall bar an action upon a sealed contract. A jury are not at liberty to imply either a bar or an abandonment from any lapse of time, short of that specified in the statute. Independent of the lapse of time, there was no evidence whatever of an abandonment of the contract.

It is also assigned for error that the judge charged the jury that the variance between the mortgage described in the agreement, and that proved by the defendant below upon the trial, did not vitiate the contract.

The alleged variance consisted in the fact that the mortgage upon the property conveyed was greater by $100 than that spe-

cified in the contract. And it is insisted that this circumstance should have been submitted to the jury as evidence of fraud on the part of the grantor. Admitting the fraud, it exists in the consideration upon which Roger's contract was founded.

In an action upon a sealed instrument, no fraud can be set up in a court of common law as a defence to the action, except such as relates to the execution of the instrument. The appropriate remedy is in equity, or by a cross suit.

In strictness, the verdict should have been for the whole amount of $625, with interest. The error in the amount of the mortgage was not a proper set off in a court of law. But inasmuch as the encumbrance upon the premises was greater than was represented at the time of the purchase, it was strictly equitable that the excess should be deducted from the purchase money. The error was against the plaintiff below, and was assented to by him. It was altogether in favor of the defendant, and it does not lie in his mouth to complain of an error in his own favor.

But it is said that the judge decided the whole matter in controversy: and it is asked, with much apparent meaning, what was left to the jury? I reply by asking what fact was there to be left to the jury? The action was upon a sealed instrument. The defendant's plea was that the instrument declared on was not his deed. Upon that plea issue was joined, and the only issue which the jury were sworn to try was, whether in fact that contract was or was not the defendant's deed. That issue upon the most unimpeachable evidence, the jury found for the plaintiff. All the other questions in the cause were not questions of fact, but questions touching the legal effect of the contract.

Whether the contract was executed or executory; whether the promise to pay was absolute or conditional; whether the contract carried interest; and if so, from what date?—are all questions of construction to be settled upon legal principles? not questions of fact for the decision of a jury.

I find no error in the decision of the judge on the trial, nor in the judgment of the court below, and am therefore of opinion that the judgment should be affirmed.

*For Affirmance*—GREEN, (C. J.) PORTER, SCHENCK, SPEN-CER, SPEER, SINNICKSON, and MCCARTER—7.

*For Reversal*—The CHANCELLOR—1.

Judgment affirmed.

CITED *in Lord* v. *Brookfield*, 8 *Vr.* 553; *Leigh* v. *Clark*, 3 *Stockt.* 112.